UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00423-RJC

| | |
|---|---|
| **JACKIE WILSON GILLILAND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 10, 12). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Jackie Wilson Gilliland ("Ms. Gilliland") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of her social security claim. Ms. Gilliland filed her application for disability insurance benefits on April 19, 2019, with an amended onset date of April 19, 2019. (Tr.[1] 19).

In denying Ms. Gilliland's social security claim, the ALJ conducted a five-step sequential evaluation. (Tr. 19–41). At step one, the ALJ found that Ms. Gilliland had not engaged in substantial gainful activity since the amended onset date. (*Id.* at 22). At step two, the ALJ found

---

[1] Citations to "Tr." throughout the order refer to the administrative record at DE 8.

1
Case 3:21-cv-00423-RJC   Document 15   Filed 08/31/22   Page 1 of 9

that Ms. Gilliland had the following combination of severe impairments: diabetes mellitus, degenerative disc disease, chronic low back pain, major depressive disorder, generalized anxiety disorder, panic disorder, history of substance abuse, and posttraumatic stress disorder. (*Id.*). The ALJ also noted that Ms. Gilliland had the following non-severe impairments: hypertension, mixed hyperlipidemia, and carpal tunnel syndrome. (*Id.*). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id.* at 23–27). Before moving to step four, the ALJ found that Ms. Gilliland had the residual functional capacity ("RFC") to perform medium work as explained below:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The individual is limited to occasional climbing of ladders; frequent climbing of stairs; frequent stooping, kneeling, crouching, and crawling. The individual would need to avoid concentrated exposure to hazards, such as unprotected heights. The individual is limited to unskilled work of a routine and repetitive nature in 2-hour segments in a stable work environment at a pace controlled by the worker. Pace is non-automated, non-conveyor belt, non-assembly line, non-piece rate. The individual is limited to occasional interpersonal interaction with coworkers and supervisors and occasional public contact. Concentration is greater than 2-hour segments/8-hour workday.

(*Id.* at 27). At step four, the ALJ found that Ms. Gilliland could not perform any past relevant work but found at step five that Ms. Gilliland could perform jobs that exist in significant numbers in the national economy. (*Id.* at 40).

After exhausting her administrative remedies, Ms. Gilliland brought the instant action for review of Defendant's decision denying her application for disability insurance benefits. (DE 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether

the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III.     DISCUSSION OF CLAIM

Plaintiff raises one challenge: the ALJ misevaluated the opinion of treating psychiatrist,

Brenda Willis, PhD. As support, Plaintiff generally argues that the ALJ did not properly determine the consistency and supportability factors, the ALJ cherry picked evidence, the ALJ relied on evidence of daily activities without explaining the extent to which Plaintiff could perform these activities, the ALJ was improperly playing doctor, and the ALJ improperly relied on State Agency psychological consultants over a treating psychiatrist. Remand is unwarranted based on this challenge.

Turning to the ALJ's decision, in determining Plaintiff's mental functioning, the ALJ considered the opinions of two State Agency psychological consultants, Dr. Carter and Dr. Hilts; a psychological consultative examiner, Dr. Davis; and Plaintiff's treating psychiatrist, Dr. Willis. (Tr. 37–39). The State Agency psychological consultants found that Plaintiff only has "mild" to "moderate" mental functioning limitations. (*Id.* at 37). The ALJ found these opinions "generally persuasive." (*Id.*). Similarly, the ALJ found the psychological consultative examiner's opinion persuasive where Dr. Davis opined that Plaintiff "could understand, retain, and follow information;" she had appropriate attention; could perform simple, repetitive tasks; did not report social difficulties; could tolerate stress and pressure; was properly oriented to person, place, time, and situation; had no judgment or memory concerns; and could care for personal needs. (*Id.* at 38). However, Dr. Willis' opinion had considerably more limitations, which the ALJ noted in finding the opinion unpersuasive.

> [T]he undersigned considered the Mental Capacity Assessment submitted by the claimant's treating psychiatrist, Dr. Willis (Exhibit 11F). On July 6, 2020, Dr. Willis reported that the claimant has opioid use disorder, PTSD, generalized anxiety disorder, panic disorder, and major depressive disorder. Dr. Willis opined that the claimant has "moderate" to "extreme" limitations in the ability to understand, remember, or apply information (Exhibit 11F/1). She opined that the claimant has "mild" to "extreme" limitations in concentration, persistence, or maintaining pace (Exhibit 11F/2). She opined that the claimant has "mild" to "extreme" limitations in adapting or managing oneself. Lastly, she opined that the claimant has "moderate" to "extreme" limitations in interacting with others (Exhibit 11F/3).

> The undersigned finds Dr. Willis' opinions not persuasive or supported by the claimant's treatment history and performance on mental status examinations. The undersigned finds Dr. Willis' opinions unpersuasive given its lack of foundation in the objective medical evidence. Her opinion is highly inconsistent with the objective medical evidence and other evidence of record. There is nothing objective in the record to indicate that the claimant has marked or extreme limitations in any of the areas of mental health functioning. These opinions have been considered, but in view of the overall record, is found not to be persuasive and unsupported by the objective medical evidence. Dr. Willis' opinions are out of proportion to her treatment notes and course of treatment, including the objective findings on examination are not fully consistent with this report, which makes it less persuasive. Mental status examinations from Dr. Willis revealed the claimant's mood was anxious and/or depressed and her affect was mood congruent (Exhibits 13F/3-16; 14F/3-5). At times, the claimant had decreased psychomotor activity, decreased focus and concentration, impaired cognitive function, and impaired memory (Exhibits 13F; 14F). Otherwise, the claimant had normal psychomotor activity, normal focus and concentration, intact cognitive function, and normal memory (Exhibit 13F/4, 8, 11, 15-16).
>
> Furthermore, the claimant was alert and oriented x4. She made good eye contact. She was cooperative. Her speech was fluent. She had logical thought process, no suicidal ideation and homicidal ideations, and good insight and judgement (Exhibit 13F/4, 8-12, 15-16). Her opinion is not consistent with ongoing functioning of the claimant. The claimant's functional report reflects that she is able to perform quite adequately in a full range of routine activities of daily living including shopping, household chores, preparing her own meals, financial matters, driving a car, and socializing with family members (Exhibit 9E). The other relevant evidence of record shows no necessity for inpatient or partial hospitalization, no need for more invasive treatment, and all support the inference that the claimant has at best moderate psychological problems. The above restrictions in the residual functional capacity fully accommodates the claimant's allegations and the RFC incorporates limitations for the impairments identified by Dr. Willis. Moreover, Dr. Willis' opinions are not proportionate to the opinions from the medical doctors in
> this case (Exhibits 2A; 6A; 6F).

(Id. at 38–39).

Plaintiff's main argument—that the ALJ misevaluated the consistency and supportability factors—is unavailing. For claims filed after March 27, 2017, the regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical

sources." 20 C.F.R. § 404.1520c(a). Thus, the treating physician rule is no longer applicable for claims filed after March 27, 2017. *Gleason v. Kijakazi*, No. 1:20-CV-00350-GCM, 2021 WL 5182102, at *2 (W.D.N.C. Nov. 8, 2021). Instead, when determining the persuasiveness of medical opinions and prior administrative medical findings the ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship the medical source has with the claimant, including the (i) length, (ii) frequency, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. *Id.* § 404.1520(a), (c). The most important of these factors are supportability and consistency:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520(b)(2), (c)(1)-(2). The ALJ's decision should explain how he considered both of these factors. *Id.* § 404.1520(b)(2).

Here, the ALJ properly discussed and evaluated Dr. Willis' opinion and sufficiently explained why he found it unpersuasive. In evaluating Dr. Willis' opinion, the ALJ considered the supportability factor by noting, among other things, that Dr. Willis' opinion is not supported by Plaintiff's treatment history and mental status exams which generally found that Plaintiff "had normal psychomotor activity, normal focus and concentration, intact cognitive function, and normal memory." (Tr. 38). The ALJ also noted that Dr. Willis' opinions are not proportionate to opinions of other doctors in this case. When discussing the consistency factor, the ALJ noted, among other things, that Dr. Willis' opinion was "not consistent with ongoing functions of the

[Plaintiff]" including Plaintiff's "full range of routine activities of daily living including shopping, household chores, preparing her own meals, financial matters, driving a car, and socializing with family members."  The ALJ also noted that Dr. Willis' opinion of "moderate" to "severe" mental limitations is inconsistent with Plaintiff's lack of invasive inpatient treatment or hospitalization.  The ALJ thus addressed the supportability and consistency factors as required by the regulations and "buil[t] an accurate and logical bridge from the evidence to his conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).  The ALJ also supported his conclusion with more than a scintilla of evidence such that a reasonable mind could be satisfied.  *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986).  Accordingly, as the ALJ supported his decision by substantial evidence, "it is not within the province of [this] court" to reweigh the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Plaintiff's next argument—that the ALJ cherry picked evidence—is also unavailing.  "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding."  *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).  Here, the ALJ fully explained Dr. Willis' opinion and noted evidence that could support a finding of greater mental limitations including, for example, that "[a]t times, [Plaintiff] had decreased psychomotor activity, decreased focus and concentration, impaired cognitive function, and impaired memory."  (Tr. 38).  The ALJ also noted that Plaintiff suffered from severe mental impairments including PTSD, anxiety, and depression.  However, the ALJ explained that Plaintiff's psychomotor activity was generally normal, that Dr. Willis' opinion was disproportionate in scope to other providers, and that Plaintiff was proscribed antidepressant and antianxiety medication. (Tr. 28, 31, 38).  *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.

1986) (noting that a symptom that can be reasonably controlled by medication or treatment is not disabling). Accordingly, the ALJ did not cherry-pick only that evidence which supported his position but instead explained the evidence and then determined that the totality of the evidence did not supported the extreme limitations provided in Dr. Willis' opinion.

Plaintiff also argues that the ALJ failed to discuss the full scope of Plaintiff's abilities to perform activities of daily living. While "an ALJ must consider all the evidence in the record, the ALJ does not have to discuss every piece of evidence." *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007) (quotations omitted). Notably, the ALJ found that Plaintiff had severe mental impairments and accounted for them in the RFC, and Plaintiff's argument about daily living fails to highlight an incongruity with the RFC based on the entirety of the record evidence. Instead, Plaintiff's argument cherry-picks facts while ignoring the weight of the record evidence.

Plaintiff further argues that the ALJ's "inference" amounts to improperly playing doctor where the ALJ found:

> The other relevant evidence of record shows no necessity for inpatient or partial hospitalization, no need for more invasive treatment, and all support the inference that the claimant has at best moderate psychological problems.

(Tr. 39). When "[t]he ALJ's conclusion is not supported by any medical evidence in the record; it amounts to the ALJ improperly 'playing doctor.'" *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017). Here, the medical evidence shows that two State Agency psychological consultants and a psychological consultative examiner found that Plaintiff suffered from no more than moderate mental problems. Accordingly, the ALJ was not playing doctor; instead, he was selecting the medical opinions that he found most credible, which is the ALJ's job.

Plaintiff's final argument—that the ALJ improperly relied on State Agency psychological

8

consultants over a treating psychiatrist—lacks legal support. The regulations do not require ALJ's to find treating physicians more persuasive than non-treating physicians. While the relationship the provider has with the patient can be a factor for ALJs to consider when determining the persuasiveness of the opinion, the relationship alone is not dispositive as the ALJ must look at other factors like supportability and consistency when determining persuasiveness. 20 C.F.R. § 404.1520c(a). As previously explained, the ALJ properly evaluated the persuasiveness of Dr. Willis' medical opinion. Tellingly, Plaintiff fails to account for the opinions of medical providers who examined Plaintiff and found her mental limitations were not extreme, like Dr. Davis.

Accordingly, as the ALJ properly evaluated Dr. Willis' opinion, remand is unwarranted.

## IV.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 10), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (DE 12), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 31, 2022

Robert J. Conrad, Jr.
United States District Judge